Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares del Condominio La Torre Miramar representada por la Presidenta de la Junta de Directores<br><br>Peticionaria<br><br>v.<br><br>Edwin Ramos Vázquez<br><br>Recurrido | Certiorari<br><br>2012 TSPR 123<br><br>186 DPR ____ |

Número del Caso: CC-2010-957

Fecha: 1ro de agosto de 2012

Tribunal de Apelaciones:

      Región de San Juan, Panel III

Abogados de la Parte Peticionaria:

      Lcdo. Gerardo A. Quirós López

Abogado de la Parte Recurrida:

      Lcdo. Julio A. González Figueroa

Materia: Injuction Violación a la Ley de Condominios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio La Torre Miramar
representada por la Presidenta
de la Junta de Directores                    Certiorari
        Peticionaria                  CC-2010-0957

            v.

    Edwin Ramos Vázquez
        Recurrido


Opinión del Tribunal emitida por el Juez Asociado señor Rivera García


En San Juan, Puerto Rico, a 1 de agosto de 2012.

El Consejo de Titulares del Condominio La Torre Miramar, representado por su Junta de Directores, solicita que revoquemos el dictamen mediante el cual el Tribunal de Apelaciones determinó que ciertas construcciones en el techo y en la azotea del edificio, realizadas por titulares anteriores de un "penthouse", no podían ser removidas. Esto, debido a que ya había transcurrido el periodo prescriptivo para impugnar tales acciones según lo dispone el Art. 42(c) de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1293f) (Ley de Condominios y Art. 42(c)).

Como asunto de umbral, este recurso permite expresarnos en torno al alcance y los efectos jurídicos de la inacción y el incumplimiento con las responsabilidades impuestas a un Consejo de Titulares y una Junta de Directores en la Ley de Condominios. En ese contexto, debemos determinar si ello impide que un elemento común general alterado por un titular sea restituido a su estado original. Conjuntamente, es necesario analizar si a la controversia de autos le aplica el Art. 42(c), según lo dispuesto en Pereira Suárez v. Jta. de Dir. Cond., res. 30 de junio de 2011, 2011 T.S.P.R. 102, 182 D.P.R. __ (2011). A su vez, debemos resolver si el incumplimiento con las obligaciones impuestas al Consejo de Titulares y a la Junta de Directores en relación a un inmueble sometido al régimen de propiedad horizontal, da base a la aplicación de un remedio en equidad.

Los antecedentes fácticos que dan origen a la controversia de autos son relativamente sencillos. Así pues, pasamos a reseñarlos para atender apropiadamente el recurso que nos ocupa.

I

El 13 de marzo de 2009 el Consejo de Titulares (Consejo o peticionarios) del Condominio La Torre Miramar[1] (Condominio o La Torre) presentó una demanda contra el

---

[1] El Condominio está ubicado en la Calle Miramar Núm. 709 en San Juan. Según surge de la escritura matriz, fue sometido al régimen de propiedad horizontal el 23 de septiembre de 1962. (Instrumento Público Núm. Catorce (14) otorgado por el notario John F. Malley, en San Juan, Puerto Rico.) La escritura está inscrita al Folio 154 vuelto del Tomo 160 de Santurce Sur, Registro de la Propiedad de San Juan, Sección Primera, Finca Núm. 5,081.

dueño del apartamento PH-A, el Sr. Edwin Ramos Vázquez (recurrido o señor Ramos Vázquez), por violar la Ley de Condominios.[2]

El apartamento del recurrido es uno de los tres "penthouses" del Condominio, los cuales constan de dos niveles y ocupan los pisos 11 y 12 de la estructura. En esencia, el Consejo alegó en su demanda que el señor Ramos Vázquez se apropió ilegalmente del área de la azotea y del techo del Condominio que queda justo sobre su apartamento. Arguyó que el recurrido hizo un hueco en el techo del segundo piso de su propiedad -que es la azotea del Condominio- y que accede a esta por una escalera que hay en el interior del apartamento. Adujo además, que el señor Ramos Vázquez mantiene sobre el hueco perforado una estructura permanente con puerta y que está construyendo un *jacuzzi* de hormigón y bloques de cemento con su correspondiente conexión de servicio eléctrico y sistema para el suministro de agua. El Consejo también se quejó de que el recurrido colocó tiestos con plantas, losetas de piso y barandas de tubos de metal galvanizados alrededor del borde de la azotea; y de que permite que uno o varios de sus perros tengan acceso a ese elemento común para realizar sus necesidades. Por ello, sostuvo que el señor Ramos Vázquez se ha apropiado ilegalmente de la azotea y del techo del Condominio, convirtiendo un elemento común general en un elemento de uso exclusivo.

---

[2] La demanda contenía dos causas de acción en cobro de dinero.

Así pues, el Consejo solicitó al Tribunal de Primera Instancia que emitiera una orden de *injunction* y ordenara al recurrido a cerrar el hueco que mantiene en el techo del apartamento, a eliminar cualquier estructura, construcción, baranda, losetas de piso, conexiones de agua y electricidad, tiestos y plantas, y a remover los perros que mantiene en la azotea. Ello, para que las superficies afectadas del Condominio fueran restituidas a su estado original.

Por su parte, el 28 de abril de 2009 el recurrido presentó una moción de desestimación ante el foro primario. En ella expresó que el área en controversia no era un techo sino una azotea, la cual es susceptible de uso limitado. Sostuvo que la intención del desarrollador fue designar la azotea como elemento común limitado. Incluso, adujo que la Ley de Condominios establece un periodo prescriptivo de dos años para impugnar este tipo de acciones. Art. 42(c) de la Ley de Condominios, supra. Por consiguiente, en vista de que él adquirió su apartamento hace diez años con las modificaciones objetadas[3] (excepto la construcción del *jacuzzi*), sostuvo que la acción interdictal estaba prescrita.

El foro de instancia ordenó a las partes auscultar aquellos hechos y asuntos que pudieran ser objeto de estipulación. A tales efectos, el 29 de julio de 2009 las

---

[3] El hueco en el techo que da acceso a la azotea, la escalera, la estructura en concreto, las barandas, los tiestos y las losetas, ya estaban presentes cuando el recurrido compró el apartamento.

partes presentaron sus estipulaciones de hechos. Por la importancia que tienen para la resolución del caso, transcribimos las de mayor relevancia:

A. El Condominio la Torre de Miramar (en lo sucesivo "La Torre") es un edificio de varios pisos principalmente con fines residenciales.

B. **A pesar de que la escritura matriz no menciona el concepto azotea, ello es realmente lo que existe en la parte superior de La Torre por cuanto existe acceso mediante una escalera. Dicha azotea es un área sobre [la] cual se puede caminar.**

C. **En la azotea, existen filtros o respiraderos, el cuarto de maquina [sic] de los ascensores, la cisterna de agua de La Torre, por lo que el personal contratado por el Condominio accede hasta allí para brindarles el mantenimiento debido.**

D. **En el momento en que el Sr. Edwin Ramos Vázquez adquirió el Penthouse A, es decir hace más de diez (10) años atrás [sic], determinó adquirirlo en las condiciones en las que se encontraba ("as is"). De la escritura otorgada se desprende que el área del techo sobre el segundo nivel del apartamento no formaba parte del inmueble, no obstante, sobre todo el resto del inmueble adquirido en esas condiciones ha realizado actos de dominio en calidad de dueño del inmueble.**

E. **……... El techo del piso 12 no refleja en los planos hueco alguno ni escalera en espiral que le brinde acceso a la azotea de La Torre del interior del piso 12. Uno de los anteriores dueños del apartamento Penthouse A realizó un hueco en el techo del piso 12 que le da acceso a la azotea de La Torre y colocó y/o instaló una escalera en espiral. De igual forma, uno de los dueños anteriores, sobre el referido hueco y ya propiamente en la azotea construyó una estructura de concreto techada que cubre la mencionada escalera ("tipo casita") y que tiene una puerta con cerradura que impide que terceros ganen acceso al apartamento del actual dueño, Sr. Edwin Ramos Vázquez, desde la azotea de La Torre.**

F. **En el área de la azotea, uno de los anteriores dueños del Penthouse A, instaló losetas, colocó barandas que cubren la parte que está**

**inmediatamente sobre el apartamento propiedad del señor Ramos Vázquez. De igual forma, colocó tiestos de diferentes tamaños y que tienen diferentes plantas, figuras tipo esculturas.**

G. **No existe evidencia de que todos los cambios mencionados en los párrafos P, Q, S y T de este documento formaran parte del diseño original.**

H. Uno de los pasados dueños del apartamento Penthouse A instaló en la azotea y para beneficio del apartamento una antena para recibir señal de televisión, un calentador de agua eléctrico con sus correspondientes paneles solares, conexiones eléctricas, de agua, luces, lámparas. A finales del año 1999, el señor Ramos Vázquez colocó un juego de mesa y cuatro (4) sillas tipo terraza en la azotea. **Más recientemente, el señor Ramos comenzó en la azotea la construcción de un jacuzzi en bloques de hormigón para la que le extendió una línea eléctrica de la conexión pre existente y realizó la instalación de tuberías para dotar al jacuzzi de agua.**

I. **Ninguno de los pasados miembros de la Junta de Condóminos o residente alguno ha realizado acercamientos en los diez (10) años que lleva como residente en La Torre el señor Ramos Vázquez relacionado a los cambios realizados por los pasados dueños del Penthouse A. Los mismos pre existían a la llegada del señor Ramos Vázquez, así se corroboró el día de la segunda inspección ocular al expresarlo la representante de la Junta de Condóminos de La Torre, quien responde al nombre de "Ana Leticia".**

J. **Que se tenga conocimiento de que no existe aprobación del Consejo de Titulares de La Torre para que los pasados dueños realizaran los cambios objeto de la demanda de epígrafe ni a los cambios que ha realizado el señor Ramos Vázquez.** La declaración jurada que acompaña la demanda y fuera suscrita por la [sic] actual Presidente del Consejo de Titulares dispone [e]l Consejo de Titulares del Condominio La Torre de Miramar jamás ha autorizado al Sr. Edwin Ramos Vázquez a que se aproveche de forma exclusiva del techo y de la azotea del Condominio que son elementos comunes generales, ni a que mantenga y se aproveche de las modificaciones hechas por anteriores dueños de su apartamento. (Énfasis nuestro). Apéndice I del recurso de *certiorari*.

Posteriormente, el 24 de mayo de 2010 el foro primario dictó una sentencia parcial en la que declaró "ha lugar" la solicitud de *injuction* y ordenó al señor Ramos Vázquez que detuviera toda construcción que estuviera realizando en la azotea del Condominio. Le ordenó, además, demoler y retirar cualquier alteración o modificación existente en el apartamento contraria a lo resuelto en la sentencia parcial, y que restaurara la azotea del Condominio a su estado original.

Inconforme con la decisión del foro de instancia, el recurrido acudió al Tribunal de Apelaciones. Así pues, mediante su dictamen emitido el 23 de agosto de 2010, el foro *a quo* revocó en parte la sentencia parcial emitida por el Tribunal de Primera Instancia. En síntesis, determinó que las modificaciones efectuadas por los anteriores dueños del apartamento PH-A -hace más de diez años y sin la autorización del Consejo- eran cambios que bajo la Ley de Condominios se podían realizar mediante el consentimiento unánime de los titulares. Consecuentemente, resolvió que el Art. 42(c) aplica al caso de autos y que, por ende, la reclamación del peticionario en cuanto a las construcciones realizadas por los pasados titulares estaba prescrita. Empero, concluyó que la acción persistía en torno a la construcción del *jacuzzi*, porque cuando se presentó la demanda de *injuction* aún se construía y no se había obtenido el consentimiento del Consejo para la referida obra.

Insatisfecho con ese dictamen, el 3 de noviembre de 2010 el Consejo acudió ante nos mediante un recurso de *certiorari*. En síntesis, alegó que el Tribunal de Apelaciones erró al concluir que la causa de acción del Consejo, que perseguía eliminar la perforación en el techo del Condominio, estaba prescrita en conformidad con el Art. 42(c). Esto, pues el techo es un elemento común general necesario que no admite que se transfiera su control o posesión, y que cualquier pacto en contrario sería nulo.[4] Arguye que el foro *a quo* incidió al concluir que la causa de acción del Consejo para eliminar la estructura en bloques y hormigón con techo y puerta construida por los anteriores dueños del apartamento PH-A, sobre el hueco del techo, estaba prescrita en conformidad con el citado Art. 42(c). Ello, pues tal construcción invade el vuelo del edificio y constituye el ejercicio del derecho de sobreelevación sin el consentimiento unánime de los condóminos.[5] De igual forma, el Consejo sostiene que el

---

[4] Los errores 1 y 2 expresan lo siguiente:

Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo que perseguía eliminar la perforación y/o hueco en el techo del Condominio La Torre Miramar realizado por anteriores dueños del Apartamiento PH-A está prescrita de conformidad con el Artículo 42(c) de la Ley 104, 31 L.P.R.A. sec. 1293(f).

Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno al hueco y/o perforación realizado en el techo del Condominio La Torre Miramar, siendo el techo un "elemento común general necesario" que no admite, ni con el consentimiento unánime de los condóminos, que se transfiera el control o posesión del mismo y que cualquier pacto en contrario será nulo. Petición de *certiotari*, pág. 8.

[5] Los señalamientos de error 3,4 y 5 expresan que:

Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo que perseguía eliminar la estructura

foro apelativo intermedio erró al señalar que la causa de acción en relación con las losetas y barandas instaladas en la azotea, que se encuentran sobre el apartamento PH-A, está prescrita en conformidad con el Art. 42(c).[6]

El 1 de abril de 2011 expedimos el auto de *certiorari* solicitado. En cumplimiento con la orden de este Tribunal, ambas partes presentaron sus respectivos alegatos. Contando con el beneficio de su comparecencia, pasamos a resolver.

II

## A. Principios promulgados por la Ley de Condominios

Uno de los principios rectores en nuestro régimen de propiedad horizontal es garantizar a cada titular el pleno disfrute de su propiedad. M.J. Godreau, <u>La Nueva Ley de Condominios</u> San Juan, Ed. Dictum, 2003, pág. 19. Dentro de

---

de bloques y hormigón con techo y puesta construida por anteriores dueños del Apartamento PH-A sobre el hueco en el techo está prescrita de conformidad con el Artículo 42(c) de la Ley 104, 31 L.P.R.A. sec. 1293 (f). Íd.

Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno a la estructura de bloques y hormigón construida sobre el hueco y/o perforación en el techo del Condominio La Torre Miramar, siendo dicha construcción una invasión al vuelo del edificio. Íd.

Erró el [Tribunal de Apelaciones] al declarar prescrita la causa de acción del Consejo en torno a la estructura de bloques y hormigón construida sobre el hueco y/o perforación en el techo del Condominio La Torre Miramar, siendo dicha construcción el ejercicio del derecho de sobrelevación sin contar con el consentimiento unánime de los condóminos. Íd.

[6] El señalamiento de error sexto establece específicamente que:
    Erró el [Tribunal de Apelaciones] al concluir que la causa de acción del Consejo en relación a las losetas instaladas en la azotea y a las barandas en acero galvanizado también instaladas en el área de la azotea que esta [sic] inmediatamente sobre el Apartamento PH-A está prescrita de conformidad con el Artículo 42 (c) de la Ley 104, 31 L.P.R.A. sec. 1293 (f).

ese concepto, la Ley de Condominios dispone que "[e]l titular de un apartamiento sometido al régimen de propiedad horizontal tiene el derecho al pleno disfrute de su apartamiento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de su[s] respectivas propiedades". Art. 1-A de la Ley Núm. 103, de 5 de abril de 2003. De igual forma, este precepto establece que tanto el Consejo, como la Junta de Directores, tienen el ineludible deber de orientar y dirigir sus acciones de administración sobre los elementos y áreas comunes del edificio hacia la propiciación del disfrute de la propiedad privada. Análogamente, esta responsabilidad se asigna al propietario del apartamento dentro del régimen. Ello, pues el ejercicio del dominio en una propiedad sometida a la Ley de Condominios "está limitado por los derechos de los demás condóminos y … el derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de convivencia y el respeto al derecho ajeno". Íd.

Igualmente, en aras de preservar el disfrute de la propiedad privada y, a su vez, lograr la sana convivencia de los condóminos, la ley exige que el ejercicio de los derechos en el condominio se oriente por los principios de la buena fe, la prohibición de ir contra los propios actos y la prohibición del abuso del derecho. Art. 1-A, supra. De esta forma, en la Ley de Condominios se prohíbe el comportamiento caprichoso de los titulares y aquellas

acciones que afectan la estabilidad del régimen. Dentro de ese marco de referencia, la ley incluye disposiciones que recogen estos principios.

Así pues, se presume que tanto las acciones de los titulares como las del Consejo deben regirse por la buena fe, el principio de no abuso del derecho y el principio de no ir en contra de los actos propios. Cónsono con lo anterior, el Art. 15 (31 L.P.R.A. 1291m) preceptúa las reglas que cada titular debe observar en la utilización de su apartamento y de los elementos comunes del condominio. Este precepto establece categóricamente, entre otras exigencias y prohibiciones, que todo **titular tiene el deber de cumplir estrictamente con todas las disposiciones de administración que se consignan en la Ley de Condominios, en la escritura o en el reglamento del condominio**. La infracción de estos principios o de las reglas enumeradas en el Art. 15 dará lugar "al ejercicio de la acción de daños y perjuicios por el titular u ocupante afectado, además de cualquier otra acción que corresponda en derecho, incluidos los interdictos… y cualquier otro remedio en equidad". 31 L.P.R.A. sec. 1291m.

Igualmente, debemos indicar que una característica fundamental que se establece en la Exposición de Motivos de la Ley de Condominios es que sean los titulares quienes tengan el control último sobre las decisiones del inmueble.[7] De esa forma, este precepto dispone que el

---

[7] Exposición de Motivos, Ley Núm. 103-2003.

Consejo de Titulares está integrado por todos los titulares y "constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal". Art. 38 (31 L.P.R.A. sec. 1293b). Este goza de personalidad jurídica y es por medio de su existencia que se hace viable la administración de las áreas comunes del inmueble por todos los titulares. Así, hemos establecido que la finalidad del Consejo de Titulares "consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros, o sea, el de los titulares frente a la comunidad y a terceros". Bravman, González v. Consejo de Titulares, res. 14 de diciembre de 2011, 2011 T.S.P.R. 189, 184 D.P.R.__. De esa forma, "sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio". Art. 38, supra. Debemos puntualizar, que en el cumplimiento de sus obligaciones, la conducta del Consejo de Titulares "debe responder al fin último de la Ley de Condominios de viabilizar la propiedad particular y privada del apartamiento". (Citas internas omitidas.) Bravman, González v. Consejo de Titulares, supra, pág. 27. A esos efectos, el Art. 38(k), expresa que el Consejo de Titulares deberá "[i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, **como tomar aquellas**

**medidas necesarias y convenientes para el mejor servicio común**". (Énfasis nuestro.) 31 L.P.R.A. sec. 1293b.

Acorde con lo intimado, la ley establece que la Junta de Directores, que constituye el órgano ejecutivo de la comunidad de titulares, tendrá el deber de "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y **elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares**". (Énfasis nuestro.) 31 L.P.R.A. 1293b-4. Asimismo, se le impone la obligación de "**[c]umplir y hacer cumplir las disposiciones de [la Ley de Condominios], del reglamento y los acuerdos del Consejo de Titulares**". (Énfasis nuestro.) 31 L.P.R.A. sec. 1293b-4.

Como podemos apreciar, la Ley de Condominios asigna responsabilidades a todos los componentes del régimen de propiedad horizontal, entiéndase titulares, Consejo de Titulares y su Junta. En ese sentido, les exige obrar de acuerdo a los principios de buena fe y equidad, ya sea en el quehacer administrativo o privado. Ello para viabilizar el máximo disfrute de la propiedad privada y el aprovechamiento del uso y disfrute de los elementos que componen el régimen. Bravman, González v. Consejo de Titulares, supra.

**B. Las acciones de impugnación bajo el Art. 42(c)**

Como es sabido, el Art. 42 de la Ley de Condominios reglamenta la impugnación de los acuerdos y las determinaciones del Consejo, así como las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores. El inciso (a) del citado precepto promueve la reducción del número de querellas ante el foro administrativo al disponer un procedimiento inicial ante los organismos internos del condominio. Pereira Suárez v. Jta. Dir. Cond., supra; Godreau, op cit. pág. 40.

El Art. 42(c) establece un término prescriptivo de dos años para la impugnación de los acuerdos u omisiones de la Junta de Directores o del Consejo de Titulares por razón de violación a la Ley de Condominios, al reglamento de la comunidad o a la escritura matriz. Específicamente, el lenguaje del citado precepto dispone:

> (c) **La acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Consejo de Titulares, con excepción de los realizados por el titular que somete el inmueble al régimen,** que violen las disposiciones de este capítulo, de la escritura matriz o del Reglamento del condominio, prescribirá a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente.
> Al ejercitar la acción de impugnación de acuerdos del Consejo de Titulares, el titular deberá acreditar que estuvo presente o representado en la reunión en que se tomó el acuerdo que impugna y que no votó a favor del mismo. Si estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. (Énfasis nuestro.)31 L.P.R.A. sec. 1293f.

Interpretando la intención legislativa del Art. 42(c), en <u>Pereira Suárez v. Jta. de Dir. Cond.</u>, supra, analizamos que el propósito de la imposición de un término prescriptivo para presentar las impugnaciones de acciones u omisiones por violaciones a la Ley de Condominios o al reglamento responde a la necesidad de estabilizar el régimen de propiedad horizontal y evitar el proceder arbitrario de los titulares contra los acuerdos, omisiones y acciones realizadas. A esos fines, expresamos que la Asamblea Legislativa quiso conformar el referido precepto a los citados principios de buena fe, la prohibición de ir en contra de los actos propios y la prohibición del abuso del Derecho. De esa forma, en <u>Pereira Suárez v. Jta. de Dir. Cond.</u>, supra, observamos que las enmiendas introducidas al Art. 42 tienen el propósito de poner un freno "al afán obstruccionista de algunos titulares que, por intereses particulares, ponen en juego la estabilidad de toda una comunidad". <u>Pereira Suárez v. Jta. Dir. Cond.</u>, supra, pág. 17. En aquel entonces, citando al profesor Godreau, enfatizamos que:

> ¿[S]i por largos años nadie ha tomado acción ante determinado cambio evidente, no es de presumir que a la larga todos han aceptado la alteración? No se trata aquí de convalidar por el transcurso del tiempo actuaciones o acuerdos que la ley no permite, no si quiera mediando consentimiento unánime. **Este nuevo término de prescripción de las acciones, le impone a los titulares la responsabilidad de actuar diligentemente en la defensa de su propiedad, porque de lo contrario se interpretará que consintieron al cambio.** (Énfasis nuestro.)

CC-2010-0957

Godreau, <u>La Nueva Ley de Condominios</u>, <u>op cit</u>. pág. 30.

Es preciso recordar que con anterioridad al establecimiento de un periodo prescriptivo, se admitía la formulación de querellas luego de haber transcurrido décadas de establecido el cambio o la violación impugnada. Tal proceder no solo propiciaba la inestabilidad del régimen y la inseguridad, sino que alteraba también el balance de la convivencia en comunidad.[8] Así pues, durante el proceso legislativo que emergió a raíz de la presentación del Proyecto del Senado 1425, las comisiones participantes tomaron en consideración el factor de que ni en la vía administrativa ni en los pronunciamientos de esta Curia "se ha reconocido la importancia que merece en el régimen el principio del reclamo diligente de derechos, encarnado en la figura de incuria y en las doctrinas de consentimiento tácito y del impedimento de ir en contra de los propios actos". <u>Pereira Suárez v. Jta. Dir. Cond.</u>, supra, págs. 15-16. Es por ello que, tras la aprobación de la Ley de Condominios, el legislador quiso poner en vigor estas doctrinas. De esa forma, el establecimiento del término de prescripción de 2 años vendría a combatir estos males y evitaría la situación de que los nuevos adquirentes impugnen los cambios que titulares anteriores habían aceptado tácitamente, menoscabando el ambiente de

---

[8] Informe Conjunto del Proyecto del Senado 1425 de las Comisiones de Vivienda, Banca, Asuntos del Consumidor y de lo Jurídico del Senado, de 12 de noviembre de 2002. 4ta sesión extraordinaria, 14ta Asamblea Legislativa.

convivencia que puede haber existido durante años en el condominio. Pereira Suárez v. Jta. Dir. Cond., supra, pág. 8, citando Informe en torno al P. del S. 1425, Comisión de Desarrollo Urbano y vivienda de la Cámara de Representantes, 3 de marzo de 2003.

Ahora bien, es necesario destacar que en Pereira Suárez v. Jta. de Dir. Cond., supra, el Presidente de la Junta de Directores del condominio en cuestión suscribió un contrato con una compañía para la operación de instalaciones de telecomunicaciones en la azotea del edificio. Dicho contrato concedía el uso exclusivo e ilimitado de dicho elemento común y, según se verificó en el expediente del caso, el Presidente no contó con la aprobación del Consejo de Titulares para otorgar el contrato. Concluimos que el contrato otorgado por el Presidente de la Junta con la compañía era un acuerdo que la ley permitía realizar. Por lo tanto, le aplicaba el periodo prescriptivo del Art. 42(c). Específicamente, en esa ocasión expresamos lo siguiente:

> El legislador fue enfático cuando aclaró que siempre que el acuerdo esté permitido por ley, se podrá cuestionar en el plazo establecido en el Art. 42(c)[...]. Estamos ante una acción anulable, no nula de por sí como serían los casos que la Junta de Directores o el Consejo de Titulares realizan un acto vedado por la ley.
> Ahora bien, el titular que desee impugnar un acuerdo deberá ser diligente en procurar su derecho. Tendrá la obligación de ejercerlo o reclamarlo dentro del término de dos años que dispone el Art. 42(c)[…] cuando se trate de acuerdos permitidos por la ley. Para ello es irrelevante si se requiere unanimidad o no. Sin embargo, cuando se trate de cuestionar acuerdos o acciones que la ley prohíbe totalmente no habrá

obstáculos prescriptivos para ejercer la acción de impugnación, independientemente del favor de los titulares. Pereira Suárez v. Jta. Dir. Cond., supra, págs. 24-25.

Queda claro, pues, que allí distinguimos que el periodo prescriptivo para impugnar las acciones, acuerdos u omisiones no es de aplicación cuando se trata de actos tajantemente prohibidos por la Ley de Condominios. A esos efectos, aclaramos que "los actos contrarios a la ley son nulos y se podrán cuestionar en cualquier momento. Por el contrario, las impugnaciones de las acciones o acuerdos que la ley faculta a los titulares a realizar, se tendrán que disputar dentro del término ordenado". Pereira Suárez v. Jta. Dir. Cond., supra, pág. 20. Así, también, enfatizamos que ese periodo de prescripción no cerraría las puertas a la posibilidad de instar acciones de impugnación. Más bien, aclaramos que estas debían ser presentadas dentro del término de dos años. De esa forma, concluimos que las acciones que realizó el Presidente de la Junta de Directores del condominio, al no estar prohibidas en la ley, estaban sometidas al periodo de impugnación de dos años.

Ahora bien, es preciso acentuar que en Pereira Suárez v. Jta. de Dir. Cond., supra, aplicamos el Art. 42(c) porque se trataba de la acción de impugnación de un titular contra un acuerdo realizado por el Presidente de la Junta de Directores de un condominio. Sin embargo, no resolvimos allí -ya que no estaba ante nuestra consideración por los hechos particulares de ese caso- si el término prescriptivo

dispuesto en el Art. 42(c) está conceptualizado para ser utilizado por el Consejo de Titulares o la Junta de Directores cuando quieren impugnar las acciones realizadas por un titular; en específico, acciones legales, pero no autorizadas conforme a los parámetros establecidos en la ley.

Precisamente, esa es una de las controversias que debemos atender para dilucidar el caso de autos. Veamos.

## C. Acciones, acuerdos u omisiones a las que le aplica el periodo prescriptivo según su ejecutor

El Proyecto del Senado 1425, según presentado el 11 de abril de 2002, proponía inicialmente el lenguaje siguiente para el Art. 42(c):

> (c) La acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Consejo de Titulares **o de cualquier titular**, que violen las disposiciones de esta Ley, de la escritura matriz o del Reglamento del condominio, caducará a los dos (2) años de haberse notificado el acuerdo, tomado la acción o de conocerse la omisión. Para los titulares que impugnen este tipo de acuerdo del Consejo de Titulares, el término se computará a partir de la notificación del mismo, siempre y cuando cumplan con los requisitos establecidos en el párrafo siguiente. (Énfasis nuestro.)

Vemos que originalmente se establecía un periodo de caducidad. Así también, inicialmente se disponía que este periodo aplicaría al ejercicio de las impugnaciones de acciones, omisiones y acuerdos efectuados, tanto por la Junta de Directores y el Consejo de Titulares, **como las**

**acciones realizadas por los titulares** que violaban la ley, la escritura matriz, y el reglamento del inmueble.[9]

Empero, una vez la Cámara de Representantes consideró el proyecto, fue devuelto al Senado con enmiendas al texto propuesto. Particularmente, en lo que concierne al Art. 42(c), el legislador decidió que establecer un periodo de caducidad era demasiado oneroso. Por tal razón, se optó por el establecimiento de un periodo de prescripción. De igual forma, debemos interpretar que la intención expresa del legislador al tachar las palabras "cualquier titular", fue que no se debía disponer un periodo de prescripción para impugnar acciones de un titular que vulneren los preceptos y la reglamentación aplicable al régimen.[10]

En consecuencia, de una lectura del Art. 42(c) luego de las enmiendas se colige que el periodo prescriptivo de dos años aplica a las acciones, acuerdos u omisiones realizados por la **Junta de Directores y el Consejo de Titulares** que violan la ley, la escritura matriz o el reglamento del condominio. Es claro que la aplicación del referido precepto presupone que lo que se impugnará será un acuerdo, una omisión o una acción tomada por un órgano director con autoridad o por sus representantes, como sucedió en <u>Pereira</u>

---

[9] Es preciso apuntar que el individuo titular no equivale al Consejo de Titulares, aunque en este último esté compuesto por titulares. En torno a este particular, resulta sencillo distinguir la definición jurídica de lo que constituye el Consejo de Titulares y cómo el concepto no es equiparable o análogo al concepto de titular. Ello, pues, el Art. 21 claramente expresa que "siempre que en esta ley se haga referencia al Consejo de Titulares se entenderá la **totalidad de ellos** …". 31 L.P.R.A. sec. 1291s.

[10] Véase P. del S. 1425, entirillado electrónico del texto aprobado en votación final por el Senado, 14 de noviembre de 2002.

Suárez v. Jta. de Dir. Cond., supra. Es decir, aplica a las impugnaciones del titular contra las acciones, omisiones o acuerdos tomados por el Consejo de Titulares o la Junta de Directores. En todo momento el Art. 42(c) se refiere a las reclamaciones de un titular hacia el Consejo de Titulares o la Junta de Directores, y no a la inversa.

Según reseñamos antes, las acciones de un titular que van contra lo establecido en la ley, el reglamento o la escritura matriz, pueden ser impugnadas mediante acciones judiciales interdictales; incluso pueden dar lugar a una acción en daños. Art. 15 de la Ley de Condominios, supra. No obstante, no surge del texto de la ley que exista un término para ello. Es decir, el resultado de las enmiendas al Proyecto del Senado 1425 fue que en toda la Ley de Condominios no se estableció un límite de tiempo para objetar ese tipo de actuaciones por parte de un titular. Indicado esto, es forzoso colegir que el periodo prescriptivo de dos años no aplica de manera alguna a las acciones de impugnación del Consejo de Titulares o la Junta de Directores contra titulares que violen las disposiciones de la Ley de Condominios, la escritura matriz o el reglamento. Sencillamente, hay que reconocer que el legislador no estableció un término para ello.

III

A. **Uso de los elementos comunes**

Según mencionáramos antes, en el régimen de propiedad horizontal, el bien común sirve para el disfrute adecuado

de lo privado. Rivera Rodríguez v. Jta. Dir. I y II, 173 D.P.R. 475 (2008). A esos fines, esta institución jurídica establece "un dominio exclusivo de un bien inmueble, el cual coexiste con un condominio forzoso e inseparable de los elementos comunes". Bravman, González v. Consejo de Titulares, supra, pág., 14. En esa concepción, todo el inmueble se erige para hacer viable la existencia del apartamento. Godreau, El condominio: el régimen de la propiedad horizontal en Puerto Rico, Ed. Dictum, 1992, pág. 15.

De igual forma, es importante enfatizar que la escritura matriz en la horizontalidad forma un estado de derecho al cual se adhieren los titulares según van adquiriendo sus apartamentos. Bravman, González v. Consejo de Titulares, supra. Es por ello que la Ley de Condominios requiere que la escritura pública se inscriba en el Registro de la Propiedad y describa cada apartamento de forma detallada, al igual que la superficie de la totalidad de los apartamentos con los gastos, ganancias y derechos en los elementos comunes. Véanse, Arts., 2, 22, 23 y 24 de la Ley de Condominios, 31 L.P.R.A. 1291, 1292, 1292a y 1292b. Véase Bravman, González v. Consejo de Titulares, supra. Asimismo, la ley exige que en la escritura matriz se precisen los elementos comunes, especificando su uso y destino. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. En relación con ese particular, la ley específicamente expresa que dicho uso y destino **solo podrá**

**modificarse mediante el consentimiento unánime de los titulares**. Íd.

Por tal razón y al aplicar los principios de convivencia reseñados al régimen, observamos que el derecho al uso de la propiedad privada está limitado por el deber de respeto al derecho ajeno; es decir, el que tienen los demás titulares sobre sus respectivas propiedades y sobre su participación en los elementos. Por ello, no se puede menoscabar el derecho de los demás condóminos sobre las áreas comunes, pues su titularidad es compartida y, en consecuencia, deben permanecer en un régimen de indivisión forzosa. Rivera Rodríguez v. Jta. Dir. I y II, supra; Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Otra limitación sobre el uso los elementos comunes es el fin para el cual se han destinado en la escritura matriz. Rivera Rodríguez v. Jta. Dir. I y II, supra.

La Ley de Condominios regula las áreas de un inmueble que necesariamente constituirán elementos comunes generales. Art. 11 de la Ley de Condominios, 31 L.P.R.A. 1291i. Como es sabido, los elementos comunes se clasifican en generales "necesarios" o "voluntarios", en atención al grado de indispensabilidad que tiene el elemento para el adecuado disfrute de las unidades privadas. Por su parte, los elementos comunes limitados se clasifican como aquellos que están destinados al uso exclusivo de dos o más apartamentos. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j.

En relación con los elementos comunes necesarios hemos dispuesto que sin ellos "resultaría inasequible el adecuado disfrute de los apartamentos". _Cestero Aguilar v. Jta. Dir. Condominio_, res. el 20 de diciembre de 2011, 2011 T.S.P.R. 203, 184 D.P.R.___, pág. 11. En esta categoría se incluyen los elementos que son necesarios para garantizar la seguridad, conservación o existencia del edificio. Íd.; _Brown III v. J.D. Cond. Playa Grande_, 154 D.P.R. 225, 233 (2001). Por tal razón, estos quedan reservados para el uso de la totalidad de los condóminos y no podrán ser susceptibles de enajenación o propiedad exclusiva de alguno o varios titulares. Íd. Vale la pena señalar que dentro de esa categoría se encuentra el vuelo, entendido este como el derecho a sobreelevar, y el techo. Art. 11 de la Ley de Condominios.

Por otro lado, los elementos voluntarios no son imprescindibles para el adecuado disfrute de la propiedad individual y, en consecuencia, pueden ser atribuidos a uno o varios titulares en específico. _Hermán J. Cestero v. Junta de Directores del Condominio Plaza del Mar_, supra. Es necesario que esa adjudicación se efectúe en la escritura matriz del condominio. Sin embargo, en aquellas instancias en que la transferencia o conversión se realice luego de la constitución del régimen, debe mediar el consentimiento unánime de todos los titulares. Art. 11, Ley de Condominios, _supra_. Véanse _Hermán J. Cestero v. Junta de Directores del Condominio Plaza del Mar_, supra; _Brown III_

v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001). Cabe puntualizar que la propia Ley de Condominios impone la limitación de que la enajenación o constitución de este tipo de áreas como privadas no puede realizarse "sino para el beneficio del Consejo de Titulares o **de uno o varios de los titulares de apartamientos o unidades en el condominio**". (Énfasis nuestro.) Art. 11 de la Ley de Condominios, supra.

Por su parte, la azotea se clasifica como un elemento general voluntario. Art. 11 de la Ley de Condominios, supra. En particular, esta área es definida como la cubierta de un edificio cuya "configuración permite su utilización como terraza o superficie por la cual se puede andar, es decir, es susceptible de utilización como si fuera otro piso". Godreau, El Condominio, op. cit., pág. 96. Véase Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973).

En torno a ello, en Consejo de Titulares v. Vargas, 101 D.P.R. 579 (1973), al interpretar la anterior Ley de Propiedad Horizontal, dispusimos que la azotea, al ser un elemento general voluntario, puede ser para el uso exclusivo de uno o algunos titulares. Sin embargo, aclaramos que no se puede transformar dicha área en una cerrada al obstaculizar el acceso de los demás titulares a esta. Igualmente, expresamos que el derecho al uso de la azotea no puede interpretarse como que incluye el derecho a

la sobreelevación, pues necesariamente ese derecho está reservado a la comunidad.

Es preciso mencionar que los hechos en Consejo de Titulares v. Vargas, supra, eran similares a los de la controversia de autos. Allí, la azotea, según descrita en la escritura matriz, fue modificada de elemento común general a limitado para el disfrute de los titulares del último piso. Así pues, un titular de un apartamento del último piso abrió un hueco en el techo de su apartamento para ganar acceso a la azotea. Construyó, también, una estructura cerrada sobre parte de la azotea y la cubrió con un techo de madera, reservándose de esa forma el uso exclusivo de una parte de ese elemento. Interpretamos, pues, que "el elemento común de la azotea es uno cuya existencia puede regularse por acuerdo de los titulares individuales". Íd., pág. 584. Explicamos que como en la escritura matriz se vislumbraba el cambio de uso de la azotea de "común general"[11] a "común limitado" para el disfrute de los titulares del último piso, era innecesario el consentimiento unánime de los titulares exigido en el Art. 16. Explicamos que "ya por adhesión al régimen[,] los titulares quejosos habían consentido la modificación afectadora de la azotea". Íd., pág. 585. Así pues, opinamos que la azotea no perdió su condición de elemento común al convertirse de general a común limitado por la disposición de la escritura matriz que permitía su asignación limitada

---

[11] Entiéndase "voluntario".

a los titulares del noveno piso. Íd., pág. 587. No obstante, por razones de seguridad, decidimos que era necesario que la azotea permaneciera abierta.[12] Con relación a la edificación construida, concluimos que afectó el derecho a la sobreelevación y contravino el Art. 18 de la Ley de Propiedad Horizontal, vigente en aquel entonces, que exigía el consentimiento unánime de los titulares para la construcción de pisos nuevos.

En la Ley de Condominios, el vuelo se clasifica como elemento común necesario. Art. 11 de la Ley de Condominios, supra. En Consejo de Titulares v. Vargas, supra, pág. 585, lo definimos como "la parte ideal del edificio susceptible de ser construida, no un elemento material tangible, sino el espacio aéreo en la parte superior de la cubierta o techo que puede ser elevada la edificación". Al ser un elemento común general necesario, el vuelo no puede ser objeto de división por parte de la comunidad y cualquier pacto en contrario es nulo. Álvarez Figueredo v. González Lamela, 138 D.P.R. 958 (1995). Sin embargo, debemos reiterar que "en lo que respecta a su extensión vertical [este elemento] es ilimitado". Godreau, El Condominio, op. cit., pág. 94. Así pues, en Álvarez Figueredo v. González Lamela, supra, decidimos que al sobreelevar un condominio

---

[12] Concretamente, consideramos allí que la azotea libre y despejada que permitió el descenso de un helicóptero, fue un elemento crucial entre la posible muerte y la vida de personas, tras el incendio en un multipisos de Avianca, en Bogotá, Colombia. Consejo de Titulares v. Vargas, 101 D.P.R. 586, esc. 7 (1973).

no se invade su vuelo,[13] pues una vez construida la nueva edificación, su techo se convierte en el techo del condominio, permaneciendo este como un elemento común general. Lo mismo sucede con el vuelo del edificio, el cual comenzará entonces a partir de la azotea de la nueva edificación. Álvarez Figueredo v. González Lamela, supra. En consecuencia, se entiende que el ejercicio de la sobreelevación no varía la naturaleza común general del vuelo. Íd. Según concluimos en Álvarez Figueredo v. González Lamela, supra, el Consejo de Titulares tiene la facultad de sobreelevar el condominio y dedicar la edificación para beneficio particular si se obtiene primero el consentimiento unánime de los titulares del inmueble y los correspondientes permisos.

Cabe precisar que dicha interpretación sobre el vuelo y sus delimitaciones, fueron recogidas en la Ley de Condominios, que enfatizó que siempre serán los titulares quienes decidirán unánimemente si se autorizan invasiones al vuelo. Godreau, La Nueva Ley de Condominios, op. cit., pág. 55. Claro está, el *derecho de autorizar* la sobreelevación no se puede ceder a un titular o a un grupo, ni siquiera por consentimiento unánime. Íd., pág. 56. Es decir, a un titular se le puede autorizar a construir o a techar, sin embargo, es el Consejo de Titulares el único que puede autorizar por unanimidad las sobreelevaciones futuras. Íd.

---

[13] En reconsideración, se revocó a Álvarez Figueredo v. González Lamela, 134 D.P.R. 374 (1993).

Vemos que las enmiendas al régimen de propiedad horizontal fueron hechas teniendo como norte el principio de disfrute del bien privado y la sana convivencia. De esta forma, la Ley de Condominios permite realizar en las áreas comunes todo aquello que beneficie a un titular siempre y cuando con ello no se invada o menoscabe el disfrute de otro apartamento o el derecho de los demás titulares sobre esas áreas. Rivera Rodríguez v. Jta. Dir. I y II, supra. Un claro ejemplo de lo anterior, es el Art. 14(a) (31 L.P.R.A. sec. 1291*l* (a)), que permite el uso del techo -que es un elemento general necesario- de forma que un titular pueda instalar en él los equipos necesarios para el disfrute exclusivo de su apartamento. Sin embargo, eso podrá hacerlo si cuenta con el voto mayoritario del Consejo de Titulares, y en caso de que se afecte el disfrute de un apartamento, con el consentimiento del titular afectado. Igualmente, esa misma disposición en su inciso "b" permite que en los elementos comunes se instalen equipos o maquinarias para el disfrute de un número limitado de titulares, siempre que se certifique al Consejo de Titulares, a juicio de perito, que no se alterará la fachada o el diseño arquitectónico, la seguridad y solidez del inmueble, ni se menoscabará el disfrute de las restantes unidades. Art. 14(b) de la Ley de Condominios (31 L.P.R.A. sec. 1291*l* (b)). De no mediar dicha certificación, se requerirá el consentimiento unánime de los titulares para esos cambios. Godreau. La Nueva Ley de Condominios, op cit., pág. 25.

De igual manera, el Art. 11(a)(1) permite "el cierre o techado de patios, terrazas o áreas abiertas, así como la construcción de nuevos pisos sobre el techo o el terreno" luego de que se obtenga, de no estar contemplado en los planos del inmueble, el consentimiento unánime de los titulares. 31 L.P.R.A. 1291i. Así también, en relación a la construcción de nuevas obras por un titular, el Art. 18 de la ley dispone, en lo pertinente, que no se podrá construir pisos o hacer obras que afecten la seguridad, la solidez y la conservación del edificio sin el consentimiento unánime de los demás. Mientras, el Art. 16 autoriza que los titulares realicen -con el voto mayoritario de los titulares- obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes. 31 L.P.R.A. sec. 1291n. No obstante, si al hacer esas obras se afecta el disfrute de un titular, se necesita su consentimiento para su realización. Íd. De igual forma, si se trata de obras que afectan adversamente los elementos comunes del inmueble, es necesario el consentimiento unánime. Íd.

Como rasgos generales del régimen, cuando se trata de la deliberación y sobre los asuntos que afectan adversamente el disfrute de la propiedad privada y el condominio, el requisito de la unanimidad es esencial para preservar los derechos fundamentales propios de dominio. Rivera Rodríguez v. Jta. Dir. I y II, supra. En cambio, en relación con los asuntos que tratan más bien sobre la

conservación y administración de los elementos comunes, la ley se inclina a requerir solamente la aprobación de esos cambios mediante el consentimiento mayoritario. Íd.

IV

En varias ocasiones hemos dispuesto que la doctrina de incuria se define como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". Molini Gronau v. Corp. P.R. Dif. Pub., 179 D.P.R. 674, 687 (2010) citando Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998, 1020 (2008). Véase además, Aponte v. Srio. de Hacienda, 125 D.P.R. 610, 618 (1990).

Esta doctrina proviene de la máxima que la equidad auxilia a quien se mantiene vigilante en el reclamo de sus derechos y no quien se duerme sobre la corriente sin mostrar excusas razonables para ello. Drake v. Old Nat. Trust Co., 871 N.E.2d 352, 356 (Ind. App. 2007). La reclamación tardía va en detrimento de la parte contraria, sobre todo cuando se tuvo amplia oportunidad de reclamar diligentemente sus derechos.[14] Es un principio profundamente enraizado en la doctrina del derecho común angloamericano que el paso del tiempo puede impedir que un reclamante reciba el remedio que solicita ante una corte.

---

[14] Northwoods Enviromental Institute v. Minnesota Pollution Control Agency, 370 N.W.2d 449 (Minn. App. 1985).

En ese sentido, la doctrina de incuria (*laches*) establece que la inacción de una parte por un largo periodo de tiempo y la legítima confianza de la otra parte, impide que se provean los remedios solicitados mediante reclamos tardíos. City of Sherrill, N.Y. v. Oneida Indian Nation of New York, 544 U.S. 197, 217-218 (2005).

Ahora bien, hemos resuelto que esta doctrina no aplica automáticamente por el mero transcurso del tiempo. Aponte v. Srio. de Hacienda, supra. En ese sentido, "cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares". Pérez, Pellot v. J.A.S.A.P., 139 D.P.R. 588 (1995). Al analizarse las distintas situaciones, se debe considerar si existía alguna justificación para la demora, el perjuicio que esta acarrea y el efecto sobre intereses privados o públicos involucrados. Comisión Ciudadanos v. G.P. Real Property, supra.

Es preciso señalar, además, que la incuria aplica cuando no existe un término reglamentario o en ley para realizar determinada acción, pero también se ha aplicado cuando existe un término que no ha sido debidamente notificado.[15] Pueblo v. Valentín, 135 D.P.R. 245 (1994). De esa forma, ante la ausencia de un término reglamentario, se ha aplicado el criterio de "término razonable". Íd. Véase Buena Vista Dairy v. J.R.T., 94 D.P.R. 624 (1967).

---

[15] Véase Colón Torres v. A.A.A., 143 D.P.R. 119 (1997); Pérez, Pellot v. J.A.S.A.P., 139 D.P.R. 588 (1995).

Específicamente, la incuria "envuelve dos elementos, a saber: la dilación injustificada en la presentación de la acción; y el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias". Torres Arzola v. Policía de Puerto Rico, 117 D.P.R. 204, 209 (1986); Pueblo v. Tribl. Superior, 81 D.P.R. 904, 9012 (1960). De igual forma, "hay que considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia". Íd. Se deben considerar los méritos y las circunstancias del caso, pues como se colige de lo antes expuesto, esta doctrina está vinculada a la idea fundamental de la equidad. Pueblo v. Tribunal Superior, supra. Es decir, al aplicarse esta doctrina, se apela a la razón y a la conciencia, ante la necesidad de encontrar y proveer soluciones justas. Íd.

Discutido el marco jurídico aplicable, pasemos pues a resolver los planteamientos del Consejo de Titulares del Condominio Torre de Miramar.

V.

En el caso de autos, la cláusula cuarta de la escritura matriz en su inciso A, al describir las áreas privadas del Condominio especifica lo siguiente:

> "---Fourth: The above-described building is composed of the following elements:
> -----A: - PRIVATE AREA.
>
> -----One. Three apartments on each one of the first nine (9) floors above the ground floor, two apartments and one studio apartment on the tenth (10th) floor and **three (3) penthouse apartments on the eleventh (11th) floor with their penthouse roof-terraces and uncovered roof areas on the**

**twelfth (12th) floor, making a total of thirty three (33) apartments.”** (Énfasis nuestro.) Apéndice del recurso, pág. 143.[16]

Más adelante, la escritura identifica al techo como elemento común y expresa que este mantendrá tal condición, salvo que se disponga otra cosa. Sobre este particular, la cláusula cuarta, inciso B, subinciso cuarto de la escritura matriz dispone específicamente que:

"-----B.- General Common Elements.

……..

-----Four. The stairway and elevators; elevator machine room, water tank and ventilation enclosures on the roof, foundations, columns, and structural walls, driveways and paved areas except parking spaces, hallways on each floor and **all the roofs (except as otherwise specified).**(Énfasis nuestro.) Ápendice del recurso, págs. 143-144.

Notemos que, según lo establecido en la escritura matriz, aunque no se hace alusión directamente a ello, el área que está sobre el techo del piso doce es una azotea, pues es una zona sobre la cual se puede caminar y tiene acceso desde un elemento común general. ~~En consecuencia,~~ En vista de ello, y según lo establecido en el Art. 11 de la Ley de Condominios, colegimos que el elemento de la azotea del Condominio es un elemento común general voluntario. Es

---

[16] Nótese que en la página inmediatamente anterior de la escritura matriz se establece que:
    ……the eleventh floor contains three (3) penthouse apartments; the twelfth (12th) floor contains three (3) covered terraces each of which belongs to the penthouse apartment immediately below.
    Apéndice del recurso, pág. 142.
De lo anterior podemos concluir que los apartamentos "penthouse" constan de dos pisos, el once y el doce. En consecuencia, la superficie de la parte techada del piso doce vendría siendo el área de la azotea del edificio.

preciso señalar también, que la designación del techo como un elemento común, no puede estar sujeta a "que otra cosa se indique", pues el techo es un elemento común necesario no susceptible de ostentar cualquier otra calificación. Véase Art. 11 de la Ley de Condominios.

Por su parte, el Consejo aduce que su causa de acción contra el recurrido para eliminar la perforación en el techo no estaba prescrita en conformidad al Art. 42(c); por ser un elemento común necesario que no admite que se transfiera su control o posesión y, por tanto, cualquier pacto en contrario sería nulo. Concluimos que le asiste la razón al peticionario en cuanto a que la causa de acción no estaba prescrita, pero por fundamentos distintos.

Debemos aclarar que aunque el techo es un elemento común necesario, lo que tajantemente prohíbe la ley es que se transfiera su titularidad, posesión o control. Así pues, es evidente que un pacto de esa naturaleza es nulo. Art. 11 de la Ley de Condominios. Empero, la perforación del techo es un cambio realizable si se obtiene el consentimiento unánime de los titulares y los correspondientes permisos. Previo a un cambio de esa naturaleza, era necesario verificar los efectos de dicha obra sobre la seguridad, solidez y conservación del edificio. Art. 18 de la Ley de Condominios, 31 L.P.R.A. sec. 1291p. Sin embargo, aunque la perforación del techo es un acto realizable y no expresamente prohibido en la ley, debido a que fue un cambio **realizado por un titular sin contar con el**

**consentimiento unánime** conforme al Art. 18, supra, no le es de aplicación el periodo prescriptivo contenido en el Art. 42(c).[17] Según discutimos antes, el Art. 42(c) aplica exclusivamente a las acciones, las omisiones o los acuerdos tomados por el Consejo de Titulares o la Junta de Directores, y no a las acciones unilaterales de un titular que sean contrarias al régimen.

De otra parte, en relación con la estructura de concreto debemos adoptar los mismos criterios que fundamentaron nuestro análisis, ya que nos encontramos ante otro cambio permisible bajo la Ley de Condominios. Como enunciamos previamente, la sobreelevación no es una invasión al vuelo, por ser este un elemento inacabable. Además, el Art. 11 de la Ley de Condominios expresa específicamente que la construcción de nuevos pisos es permisible mediante el consentimiento unánime. Véase, además, el Art. 18, supra. No obstante, en el caso de marras la sobreelevación fue un cambio realizado por un titular y, por lo tanto, tampoco está sujeto al periodo prescriptivo de dos años.

En cuanto a la superficie sobre el techo, las partes estipularon correctamente que esta es una azotea, pues

---

[17] Aunque la Ley de Condominios, supra, es de aplicación retroactiva, es preciso señalar esta enmendó la Ley de Propiedad Horizontal y le añadió al Art. 18 el requisito de obtener "los permisos de las agencias pertinentes". Art. 18 de la Ley de Condominios, 31 L.P.R.A. sec. 1291p. M.J. Godreau, La Nueva Ley de Condominios, San Juan, Ed. Dictum, 2003, pág.86. Véase Pereira Suárez v. Jta. Dir. Cond. res. el 30 de junio de 2011, 2012 T.S.P.R. 102, 182 D.P.R. __ (2011). En el caso de autos, al haber sido hechas con anterioridad a la aprobación de la Ley de Condominios, estas construcciones no requerían los permisos de las agencias correspondientes, pero sí el consentimiento unánime de los titulares, pues era el requisito previsto al momento de su realización.

CC-2010-0957

según mencionamos, es un área habilitada para caminar sobre ella, y existe una escalera comunal que permite el acceso a esta.[18] Como especificamos antes, la azotea es un elemento común voluntario. Por ello, puede variarse su uso mediante consentimiento unánime de los titulares. A esos efectos, también es preciso reconocer que estatutariamente se autoriza a los titulares -con el voto mayoritario- a realizar las obras necesarias para la conservación o seguridad del inmueble y **para el uso eficaz de los elementos comunes**. Art. 16 (31 L.P.R.A. sec. 1291n). Empero, si la obra para el uso eficaz del elemento afecta o menoscaba el disfrute de un titular en particular, se necesita el consentimiento del afectado para que se realice el cambio. Íd.

De la escritura matriz se desprende que la azotea del Condominio es un elemento común general. La instalación de las losetas en la azotea puede calificarse como una obra realizada por el titular para darle un uso más eficaz a ese elemento común. Sin embargo, las referidas instalaciones no podían realizarse por un titular unilateralmente, pues la azotea, según podemos apreciar de lo dispuesto en la escritura, es un elemento común general.[19] Así pues, los cambios a este elemento común para promover su uso eficaz

---

[18] Véase e.g. Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973), cuando define la azotea como "la cubierta llana de un edificio dispuesta para poder andar por ella de donde se deduce según su configuración física un techo puede o no ser al mismo tiempo azotea". (Citas internas omitidas).

[19] No se demostró, por otra parte, que esta obra afectara el uso de las diferentes maquinarias ubicadas en la azotea.

podían realizarse si se contaba primero con el acuerdo de la mayoría de los titulares. Véase Art. 16, Ley de Condominios. Es decir, estas obras habrían constituido un cambio perfectamente válido de haberse contado con el consentimiento requerido por ley. Por su parte, la instalación de las barandas de metal que cerró el área superficial de la azotea que queda justo sobre el apartamento PH-A, limitó el acceso de los demás titulares a este elemento. No obstante, es preciso apuntar que en vista de lo dispuesto en Consejo de Titulares v. Vargas, supra, sobre la necesidad de mantener el área de la azotea con libre acceso por razones de seguridad, el cercamiento de un área de la azotea no era permisible.

En fin, exceptuando este último cambio, nos encontramos ante una variedad de obras realizadas a elementos comunes, que eran aceptables bajo la Ley de Condominios, ya sea mediante el consentimiento unánime o la aprobación por voto mayoritario del Consejo de Titulares. Si todos esos cambios hubieran sido realizados por el Consejo de Titulares o la Junta de Directores, habrían estado sujetos al periodo de prescripción de dos años que dispone el discutido Art. 42(c). Empero, hemos concluido que ese articulado no aplica cuando se trata de las acciones unilaterales de un titular. Cónsono con lo enunciado, los cambios en el techo y la azotea que preexistían a la adquisición del apartamento PH-A por el señor Ramos Vázquez, no están sujetos al periodo de impugnación de dos años. Ello es así, aunque el

recurrido adquirió el apartamento tal como se encontraba y con los elementos comunes en su estado manifiesto. Véase Art. 15 de la Ley de Condominios. Este debió prever que la realidad extraregistral de la propiedad que adquirió no concordaba con la realidad establecida en el registro.

Ahora bien, cabe preguntarse ¿por qué el Consejo de Titulares no actuó antes y esperó a la construcción del *jacuzzi* para impugnar las construcciones sobre la azotea? No surge del expediente evidencia ni alegación alguna de que antes de 1999 o subsiguientemente hasta que fue presentada la demanda en el 2010, algún titular, el Consejo o la Junta, hayan reclamado o requerido a los anteriores dueños del apartamento PH-A la remoción de las construcciones en el techo y en la azotea del Condominio. Ese hecho surge diáfanamente de las estipulaciones que las partes presentaron ante el foro primario.[20]

También es un hecho estipulado, que en la azotea del Condominio están ubicados los respiraderos, la cisterna de agua y el cuarto de máquinas de los ascensores.[21] Por lo tanto, el personal contratado por el Condominio frecuenta acudir a ese lugar para brindar el mantenimiento necesario.

---

[20] La estipulación "B" de la ponencia expresa lo siguiente:
A pesar de que la escritura matriz no menciona el concepto azotea, ello es realmente lo que existe en la parte superior de La Torre por cuanto existe acceso mediante una escalera. Dicha azotea es un área sobre [la] cual se puede caminar.

[21] La estipulación "C" de la ponencia expresa lo siguiente:
En la azotea, existen filtros o respiraderos, el cuarto de maquina [sic] de los ascensores, la cisterna de agua de La Torre, por lo que el personal contratado por el Condominio accede hasta allí para brindarles el mantenimiento debido.

Esa prueba, más todo el tiempo transcurrido, nos llevan a concluir que las construcciones objetadas no pudieron pasar desapercibidas para el Consejo ni la Junta.

En este contexto, es importante recalcar que así como la Ley de Condominios impone un término prescriptivo para evitar el retraso negligente en el reclamo de derechos y el abuso del derecho a los titulares, igualmente el Consejo de Titulares y la Junta de Directores tienen responsabilidades estatutarias que no se deben ejercer de manera arbitraria, irrazonable o cuando resulte a su conveniencia. Recordemos que el Art. 38D(i) obliga a la Junta de Directores a **cumplir con las disposiciones de la Ley de Condominios, del reglamento y los acuerdos del Consejo de Titulares**. 31 L.P.R.A. sec. 1293b-4. Asimismo, como señalamos antes, el Art. 38(k) expresa que el Consejo de Titulares deberá **tomar aquellas medidas necesarias y convenientes para el mejor servicio común**. 31 L.P.R.A. sec. 1293b.

En vista de lo anterior, concebimos que los parámetros y principios que fundamentan el régimen de propiedad horizontal, le aplican tanto al Consejo de Titulares, así como a la Junta de Directores y a los titulares. Por consiguiente, es impermisible que en cualquier momento, sin importar las consecuencias económicas que ello tenga sobre un nuevo adquirente -como es el caso del recurrido- se reclame y exija que se devuelvan las áreas comunes al estado original cuando ha transcurrido un tiempo irrazonable. Más aún, cuando no se demostró que se

denunciaron los cambios reclamados ni se presentó una razón que justificara tal dilación.[22] Ese proceder afecta negativamente la estabilidad del régimen de propiedad horizontal y propicia las acciones arbitrarias y selectivas de las responsabilidades de los organismos administrativos del condominio.

Por otra parte, en nuestro esquema de horizontalidad, la doctrina de equidad de la incuria nunca ha sido aplicada. Como bien argumenta el recurrido en su alegato, no tenemos duda de que el Consejo ha incurrido en dejadez e incuria en el reclamo de sus derechos y la práctica de sus responsabilidades.[23] Por tal razón, consideramos que es injusto ordenar la demolición de las estructuras habidas en la azotea de La Torre a expensas del titular que las adquirió así. La inacción y la desidia de la Junta de Directores y del Consejo durante todo ese tiempo transcurrido en relación a sus responsabilidades estatutarias, no pueden ser avaladas por este Tribunal. Tal razonamiento es ineludible, cuando estos organismos ostentan la obligación de actuar diligentemente en la

---

[22] La estipulación "I" de la ponencia expresa como sigue:
> Ninguno de los pasados miembros de la Junta de Condóminos o residente alguno ha realizado acercamientos en los diez (10) años que lleva como residente en La Torre el señor Ramos Vázquez relacionado a los cambios realizados por los pasados dueños del Penthouse A. Los mismos pre existían a la llegada del señor Ramos Vázquez, así se corroboró el día de la segunda inspección ocular al expresarlo la representante de la Junta de Condóminos de La Torre, quien responde al nombre de "Ana Leticia".

[23] Alegato del recurrido, pág. 18. Véase también la *Solicitud de desestimación*, Apéndice del recurso de *certiorari*, pág. 135.

defensa de su propiedad y no dejar transcurrir largos periodos de tiempo para ejercer sus derechos.

Añádasele a lo anterior que el Consejo en ningún momento acreditó justa causa para la tardanza en la presentación de su acción. Igualmente, debemos considerar que el perjuicio de conceder el remedio tal como nos solicita el Consejo de Titulares obraría contra una persona a la que no se le puede atribuir responsabilidad de los cambios realizados sobre los elementos comunes. Proveer el remedio solicitado premiaría la morosidad de los órganos administrativos en el régimen de propiedad horizontal, en perjuicio de los nuevos adquirentes.

Es preciso reiterar que las circunstancias del caso de autos son muy particulares. Del expediente surge meridianamente claro que el recurrido no realizó los cambios impugnados por el Consejo, y luego de diez años se pretende exigir que se devuelva la azotea a su estado original a costa suya. Según hemos puntualizado, el Consejo de Titulares tiene la facultad última de administrar los elementos comunes, y el desempeño de esa responsabilidad, no está sujeto a un periodo prescriptivo. Opinamos pues, que el Consejo de Titulares no puede perder nunca esta prerrogativa. Ahora bien, su dejadez, incuria y falta de acción afirmativa no pueden pasar inadvertidamente ante los antecedentes fácticos que dieron origen al caso.

Nuestro deber es impartir justicia y en este caso en particular debemos mantener un balance entre las exigencias

antagónicas presentadas. A la luz de todo lo anterior, en aras de proveer un remedio justo, en equidad decidimos que por ser construcciones que tenían que ser aprobadas por los titulares en unanimidad, debe restablecerse el techo a su estado original eliminando el hueco perforado, al igual que debe removerse la estructura "tipo casita" existente sobre la azotea. Sin embargo, en consideración a que el recurrido no realizó los cambios impugnados y ante la patente incuria del Consejo de Titulares, será responsabilidad de este último corregir dichas alteraciones con cargo exclusivamente a sus expensas.

Asimismo, en cuanto a las losetas, los tiestos y las barandas que se encuentran en la azotea, será responsabilidad del Consejo removerlos, al igual que sufragar los gastos de los trabajos que sean necesarios para ello. En cuanto al *jacuzzi*, será responsabilidad del recurrido removerlo según se estableció en el dictamen emitido por el foro apelativo intermedio.

Una vez más, reafirmamos que es responsabilidad del Consejo de Titulares y de la Junta de Directores velar por el buen uso y aprovechamiento de los elementos comunes. Empero, ese deber tiene que cumplirse diligentemente para evitar situaciones como la presente, en la que se afectan adversamente los derechos de un nuevo adquirente. Por su incuria, el Consejo y la Junta de Directores no pueden recibir el remedio solicitado.

Por último, debemos recalcar que "[c]omo accesorio del derecho de propiedad exclusivo sobre el apartamento o local, está el derecho de cada titular al disfrute y aprovechamiento de los elementos comunes del edificio, existiendo, entonces, una situación de copropiedad a favor de cada titular con relación a los elementos comunes". J.R. Vélez Torres, Curso de Derecho Civil: los Bienes y los Derechos Reales, Madrid, Offirgraf, 1983, T. II, pág. 166.

A tenor con lo anterior, es imprescindible aclarar los fundamentos de los derechos reales que nos motivan a ordenar la remoción de las construcciones en la azotea del edificio. El Código Civil de Puerto Rico en su Art. 280 define el derecho de propiedad como aquel "por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra." 31 L.P.R.A. 1111. De esta forma, la "propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes." Íd. En consecuencia, "el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla". Íd.

En el caso de autos, como la propiedad en controversia está sometida al régimen de propiedad horizontal, es obligatorio colegir que los elementos comunes son objeto de copropiedad a favor de cada titular del condominio. En consecuencia, no podemos concebir forma alguna en que estos titulares puedan perder su prerrogativa de ser reivindicados en la posesión y dominio de los elementos

comunes, incluyendo como en este caso, las áreas de la azotea y el techo. A esos efectos, el Consejo de Titulares es guardián de ese derecho propietario que tienen todos los propietarios. No obstante, el hecho de que el Consejo no haya sido diligente en el cumplimiento de tal tarea, no hace legítima una construcción que atenta contra el régimen catastral que impera en el sistema de horizontalidad. Precisamente, reconociendo esto, en Bravman, González v. Consejo de Titulares, Op. del 14 de diciembre de 2011, 2011 T.S.P.R. 189, concluimos que la Ley de Condominios impide la adquisición por prescripción adquisitiva extraordinaria o usucapión de los elementos comunes. Asimismo, determinamos que "no se puede variar el uso y destino ni la descripción registral del bien adquirido sin el consentimiento unánime de todos los titulares". Íd.

Siendo ello así, resultaría contradictorio resolver que en la presente controversia las construcciones pueden permanecer porque hubo incuria de parte del Consejo de Titulares. Aunque el recurrido no plantee que adquirió la azotea por prescripción adquisitiva extraordinaria, el efecto de decidir que las construcciones pueden permanecer sería permitir que este titular se apropie de facto de un elemento común. Así, en un periodo menor que aquel dispuesto para la usucapión -que resolvimos no aplica a elementos comunes- estaríamos permitiendo el cambio de uso y destino de la azotea de un condominio sin el consentimiento unánime de los titulares.

En atención a ello, decidir que permanezcan las estructuras que afectan a la azotea y el techo, sería privar a los titulares de su derecho propietario sobre estos elementos comunes. Así también, estaríamos permitiendo que la realidad extraregistral de las condiciones del Condominio no corresponda con las descripciones habidas en el Registro de la Propiedad. Al ordenar la remoción de las construcciones en la azotea y el techo a costa del Consejo de Titulares, se reivindica el derecho de propiedad que tiene este último sobre los elementos comunes y se le impone una sanción por su desidia e incumplimiento con sus funciones por un periodo de más de diez años. Asimismo, se libera al titular afectado de tener que responder por las construcciones que no realizó y se armoniza la realidad extraregistral de los elementos comunes con las descripciones según dispuestas en el Registro de la Propiedad. Proceder de otra forma, promovería una discordancia en tales descripciones y la realidad del estado de la propiedad sometida al régimen de la horizontalidad.

VI

Por los fundamentos que anteceden, se revoca en parte la sentencia del Tribunal de Apelaciones. Resolvemos que las construcciones en el techo y la azotea del Condominio La Torre de Miramar no están sujetas al periodo de prescripción dispuesto en el Art. 42(c), ya que dicho término no aplica a las acciones realizadas por los

titulares. Sin embargo, por su desidia, falta de diligencia y craso incumplimiento de sus deberes, el Consejo de Titulares deberá asumir los gastos que conlleve cerrar el hueco en el techo, así como de remover las losetas, las barandas, los tiestos y la estructura de concreto ubicados en la azotea.

Por otro lado, se confirma la referida sentencia en cuanto a que el Sr. Edwin Ramos Vázquez tiene que remover el *jacuzzi* y todo otro equipo o instalación eléctrica y pluvial accesoria al mismo.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Consejo de Titulares del
   Condominio La Torre                       Certiorari
Miramar representada por
la Presidenta de la Junta
     de Directores               CC-2010-0957
      Peticionaria

        v.

  Edwin Ramos Vázquez
      Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 1 de agosto de 2012.


Por los fundamentos antes expuestos, se revoca en parte la sentencia del Tribunal de Apelaciones. Resolvemos, a su vez, que el periodo de prescripción dispuesto en el Art. 42(c) no aplica a las acciones realizadas por los titulares. En consecuencia, las construcciones en el techo y la azotea del Condominio La Torre de Miramar no están sujetas a dicho término prescriptivo. Empero, por su desidia, falta de diligencia y craso incumplimiento de sus deberes, el Consejo de Titulares deberá asumir los gastos que conlleve cerrar el hueco en el techo, así como de remover las losetas, las barandas, los tiestos y la estructura de concreto ubicados en la azotea.

Asimismo, se confirma la referida sentencia en cuanto a que el Sr. Edwin Ramos Vázquez tiene que remover el *jacuzzi* y todo otro equipo o instalación eléctrica y pluvial accesoria al mismo.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión escrita. El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad y Disidente. El Juez Asociado señor Kolthoff Caraballo no intervino.


Larissa Ortiz Modestti
Secretaria del Tribunal Supremo (Interina)

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio la Torre Miramar
Representado por la Presidenta
de la Junta de Directores

    Peticionaria

       v.                    CC-2010-0957   Certiorari

Edwin Ramos Vázquez

    Recurrido

Opinión de conformidad y disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 2 de agosto de 2012.

Estoy conforme con la determinación que acoge la mayoría de este Tribunal a los efectos de que en reclamos contra los titulares no aplica el término prescriptivo de dos años establecido en el Art. 42(c) de la Ley de Condominios, Ley Núm. 103-2003, 31 L.P.R.A. sec. 1293f.

De otra parte, disiento de la decisión emitida por la Opinión Mayoritaria que reconoce la aplicabilidad de la doctrina de incuria pero concede el remedio de remoción de ciertas estructuras peticionado por el Consejo de Titulares. Ello, a pesar de la inacción injustificada del Consejo de Titulares —por más

de diez años– para tomar las medidas necesarias y convenientes en la buena administración del régimen de propiedad horizontal en un tiempo razonable y contrario al historial legislativo de la Ley de Condominios que apunta la necesidad de requerir diligencia en los reclamos y la actuación responsable en la defensa del régimen de propiedad horizontal.

I

El Sr. Edwin Ramos Vázquez (Ramos Vázquez) adquirió el 27 de febrero de 1999 el "penthouse" PH-A de dos niveles. En ese momento, el apartamento contenía un hueco en el techo del segundo piso por el cual se accedía a la azotea del Condominio por una escalera interior del apartamento. Sobre el hueco, es decir, en el área de la azotea, existía una estructura de concreto techada que cubre la mencionada escalera. Igualmente, se habían instalado unas losetas y barandas que cubren el área que queda inmediatamente sobre el apartamento del señor Ramos Vázquez. A su vez, se colocaron tiestos con diferentes plantas y estructuras.

Todos los cambios señalados existían al momento de que el señor Ramos Vázquez adquirió el apartamento. Ninguno de los cambios antes destacados surgen del registro, la escritura matriz o los planos del apartamento. Tampoco fueron aprobados por el Consejo de Titulares. Posteriormente, el señor Ramos Vázquez comenzó la construcción de un área de jacuzzi en hormigón y

bloques de cemento con su correspondiente conexión de agua y luz en la referida área.

Transcurridos más de diez años desde que el señor Ramos Vázquez es dueño del "penthouse", el 13 de marzo de 2009 el Consejo de Titulares del Condominio interpuso una demanda en su contra por violar la Ley de Condominios. En síntesis, adujo que el señor Ramos Vázquez se apropió ilegalmente del área de la azotea y techo del Condominio que queda justo sobre su apartamento.[24] A base de ello, solicitó al Tribunal de Primera Instancia que emitiera un *injunction* y ordenara cerrar el hueco que mantiene en el techo del apartamento y eliminar las estructuras allí ubicadas a los fines de restituir a su estado original el área.

El Tribunal de Primera Instancia emitió una sentencia parcial a favor del Consejo de Titulares. Mediante ésta, ordenó la remoción de todas las áreas a expensas del señor Ramos Vázquez. Sostuvo su dictamen en que las construcciones aludidas tuvieron el efecto de variar el

---

[24]Debemos aclarar que en el presente caso el Sr. Edwin Ramos Vázquez no hizo reclamo alguno en torno a haber adquirido por prescripción adquisitiva la azotea. Ello no tendría cabida conforme a lo establecido en Bravman, González v. Consejo de Titulares, Op. 14 de diciembre de 2011, 2011 T.S.P.R. 189, 183 D.P.R.___(2011).El señor Ramos Vázquez solamente tiene a su disposición el uso de un elemento común limitado a los "penthouses". Siendo ello, el señor Ramos Vázquez nunca podrá adquirir la referida área como una privativa sin el consentimiento unánime de los titulares y la modificación de la escritura matriz a estos efectos. Tampoco podrá limitar el uso de ésta a los demás titulares de los "penthouses" por el transcurso del tiempo. Recordemos, que la usucapión no se da en los elementos comunes del inmueble ya sean generales o limitados.

uso y destino de la azotea sin el consentimiento unánime de los titulares, lo que constituyeron actuaciones nulas.

Inconforme, el señor Ramos Vázquez acudió al Tribunal de Apelaciones. El foro intermedio emitió sentencia el 23 de agosto de 2010 en la que modificó la sentencia del tribunal de instancia. En síntesis, alteró el dictamen emitido por el foro primario y dejó sin efecto el interdicto emitido en cuanto a las modificaciones realizadas por los titulares anteriores del apartamento. En cuanto a éstas, concluyó que el Consejo de Titulares estableció un reclamo que estaba prescrito ya que aplicó el Art. 42 (c) de la Ley de Condominios, *supra.* Con relación al jacuzzi, dilucidó que aún estaba en construcción sin el consentimiento del Consejo de Titulares, por lo que el Tribunal de Primera Instancia actuó conforme a derecho.

Como consecuencia de la decisión del Tribunal de Apelaciones, el Consejo de Titulares acudió ante este Tribunal y cuestionó la determinación de que la causa de acción estuviera prescrita. Para ello, argumentó que las construcciones fueron contrarias a las disposiciones contenidas en la Ley de Condominios, por lo que no aplica un periodo prescriptivo.

**II**

Reiteradamente, hemos expuesto nuestro deber de velar por el fiel cumplimiento de las disposiciones contenidas en la Ley de Condominios. A estos fines, hemos sido

consistentes en aplicar las disposiciones del régimen voluntario según éste fuera constituido. Véanse, Art. 22 al 33 de la Ley de Condominios, 31 L.P.R.A. secs. 1292-1292k; Bravman, González v. Consejo de Titulares, Op. 14 de diciembre de 2011, 2011 T.S.P.R. 189, 183 D.P.R.___ (2011); Batista de Nobbe v. Jta. Dir. Cond., Opinión disidente Juez Asociado señor Estrella Martínez, res. 3 de abril de 2012, 2012 T.S.P.R. 63, 185 D.P.R.___(2012).

Como consecuencia, no hemos vacilado en recordar que lo consignado en la escritura matriz gobierna el régimen de horizontalidad y es la fuente a cuyas disposiciones debemos acudir para dirimir cualquier conflicto. Véanse, Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 245 (1978). Ésta debe ser examinada conjuntamente con los planos sometidos al Registro de la Propiedad. Estos documentos constituyen y consagran gráficamente los derechos de los interesados avalados por la fe pública registral. Arce v. Caribbean Home Const. Corp., supra, págs. 257-258.

La escritura matriz constituye la fuente que precisa el destino de toda área del inmueble y la forma en que ésta puede variarse. Véanse, Bravman, González v. Consejo de Titulares, supra; Batista de Nobbe v. Jta. Dir. Cond., Opinión disidente Juez Asociado señor Estrella Martínez, supra; Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475, 483 (2008).

Como bien expresa la mayoría de este Tribunal, la Ley de Condominios está anclada en la preservación del derecho al disfrute de la propiedad privada, en un ambiente de sana convivencia de los condóminos. Con ese norte, la Ley de Condominios consagra en su Art. 1-A que en el ejercicio y reclamo de sus derechos, se actúe conforme a los principios de buena fe, la prohibición de ir contra los actos propios y la del abuso del derecho. Ese principio aplica a todos los miembros del régimen incluyendo al Consejo de Titulares, quien está compuesto por todos los titulares, y posee la indelegable tarea de responder al fin último de la Ley de Condominios para viabilizar el disfrute de la propiedad particular y privada del apartamiento. Para ello, tiene la facultad y obligación de "[i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común". 31 L.P.R.A. sec. 1293b.

Para viabilizar la propiedad horizontal existe un alto interés en promover la estabilidad del régimen. Con ese fin, la Asamblea Legislativa consideró apropiado limitar el tiempo mediante el cual se puede reclamar por los acuerdos, acciones u omisiones dentro del régimen. Así se pretendió establecer un término de caducidad de dos años para toda acción de impugnación. Originalmente, se optó por aplicar un término de caducidad a las objeciones contra la Junta de Directores, el Consejo de Titulares y

**los titulares.** Véase, P. del S. 1425 de 11 de abril de 2002, 14ta Asamblea Legislativa, 3ra Sesión Ordinaria, pág. 48. Ello respondía a la necesidad de reconocer la importancia del "reclamo diligente de los derechos, encarnado, en el principio de la incuria y en las doctrinas de consentimiento tácito y del impedimento de ir en contra de los propios actos. El establecimiento de un término de caducidad de dos (2) años viene a reforzar la promulgación para el régimen de los principios generales del derecho enunciados en el Artículo 1-A". Informe Conjunto de las Comisiones de Vivienda; de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 33.

Esta visión aceptó que la inacción equivale al consentimiento tácito en aquellas circunstancias donde lo acaecido era permitido por virtud de la Ley de Condominios, aunque no se hubiera realizado conforme a las disposiciones contenidas en ésta. Por ello, se expresó que "no debe haber reparos a que la inacción por todos los titulares durante dos años luego de haberse efectuado un cambio que la ley permite tenga un efecto equivalente a la prestación de un consentimiento unánime". Íd. Véanse, además, Ponencia del Departamento de Asuntos del Consumidor del 27 de agosto de 2002 con relación al P. del S. 1425, págs. 13-14; Ponencia de Michel J. Godreau Robles del 11 de julio de 2002 con relación al P. del S. 1425,

pág. 15; Compendio Revisado de Enmiendas para mejorar el P. del S. 1425 sobre una Nueva Ley de Condominios por Michel J. Godreau de 8 de julio de 2002, pág. 12; Ponencia del Departamento de Justicia del 19 de junio de 2002 con relación al P. del S. 1425, págs. 7-8.

No obstante lo anterior, el historial legislativo refleja que una vez el P. del S. 1425 fue examinado por la Cámara de Representantes, ésta optó por cambiar el término de caducidad a uno de prescripción. Cuando el proyecto fue devuelto al Senado, con enmiendas al texto del inciso (c), éstas tuvieron el efecto de establecer un término prescriptivo de dos años para las acciones de impugnaciones entabladas contra el Consejo de Titulares y aquéllas en que se cuestionaban las determinaciones, omisiones o actuaciones del Director o la Junta de Directores, **solamente.** El texto aprobado no impuso ese término prescriptivo a las impugnaciones de las acciones u omisiones de los titulares como originalmente se propuso. Véase, Entrillado electrónico del texto aprobado en votación final por el Senado, 14 de noviembre de 2002, pág. 59. En efecto, la aprobación del referido artículo no atendió ni dispuso un periodo en el que se podía instar una reclamación contra un titular.

Hoy, la Opinión Mayoritaria reconoce ese hecho, y atiende la laguna que creó la aprobación del inciso (C) del Art. 42 de la Ley de Condominios. De esta forma, este Tribunal resuelve que en ausencia de un tiempo para

impugnar las acciones contra un titular deben prevalecer los principios de la doctrina de incuria para la acción contra un titular. Ese principio aplica a las acciones entabladas por el Consejo de Titulares bajo la premisa de que a dicho cuerpo también le aplican los postulados de la Ley de Condominios sobre la buena fe, la prohibición de ir contra los actos propios y la del abuso del derecho incorporados en el Art. 1-A de la ley. Estoy conforme con tal proceder.

Los principios de la doctrina de incuria están elaborados en la Opinión mayoritaria que hoy emite este Tribunal. Sobre ello, recalcamos que la incuria castiga la inacción de una parte por un periodo prolongado de tiempo en impedimento para que se provean los remedios solicitados mediante reclamos traídos a destiempo. Molini Gronau v. Corp. P.R. Dif. Púb., 179 D.P.R. 674, 687 (2010); Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998, 1020 (2008). De igual forma, resalta que la incuria no aplica por el mero transcurso del tiempo y que existen otros factores a considerarse para la justificación por la demora, el perjuicio que acarrea y el efecto sobre el balance de intereses involucrados.

Con estos preceptos nos corresponde dilucidar, en primer lugar, si el reclamo entablado por el Consejo de Titulares fue a destiempo y de no serlo establecer el remedio que procede en las circunstancias del caso ante este Tribunal.

III

Al examinar el expediente ante nuestra consideración surge la descripción del apartamento que le pertenece al señor Ramos Vázquez. En lo pertinente dispone como sigue:

> [l]ocated on the west side of the building on the eleventh (11th) and twelfth (12th) floors above the ground, facing Miramar Avenue, consisting of two (2) bedrooms, a living-dining room, kitchen and bathroom on the eleventh floor, a circular stairway leading to the twelfth floor and a covered terrace on the twelfth floor. Its main entrance door in on the eleventh floor at the rear of the apartment and opens into the living-dining room…

Las áreas privadas del Condominio que constan en la escritura matriz se describen como:

> ---Fourth: The above-described building is composed of the following elements:
>
> -----A: PRIVATE AREA.
>
> -----One. Three apartments on each one of the first nine (9) floors above the ground floor, two apartments and one studio apartment on the tenth (10th) floor and three (3) penthouse apartments on the eleventh (11th) floor with their penthouse roof-terraces **and uncovered roof areas on the twelfth (12th) floor,** making a total of thirty three (33) apartments. (Énfasis nuestro.)

En cuanto a los elementos comunes, éstos constan descritos en la cláusula cuarta, inciso B, subinciso cuarto de la escritura matriz, que dispone específicamente:

> -----B.-General Common Elements.
> ….
>
> -----Four. The stairway and elevators; elevator machine room, water tank and ventilation enclosures on the roof, foundations, columns, and structural walls, driveways and paved areas

> except parking spaces, hallways on each floor
> and **all the roofs (except as otherwise
> specified)**. (Énfasis nuestro.)

La escritura otorgada revela que el área del techo sobre el segundo nivel del "penthouse" del señor Ramos Vázquez no le pertenece. Ésta no constituye un área privada de su apartamento. No obstante, se describe que los "penthouses" tienen acceso al área sobre su techo. De las estipulaciones de las partes resalta que éstas acordaron que lo que realmente existe en la parte superior de los "penthouses" es una azotea y que ésta no formaba parte del inmueble. Por tanto, de la descripción registral antes expuesta, concluimos que el área en controversia fue destinada como un elemento común voluntario.[25]

Como bien expone la mayoría de este Tribunal, las estructuras edificadas en esa área afectan la sobre elevación. Sobre ésta se puede edificar, ya que ello no afecta el vuelo. En cuanto a la perforación en el área del techo, la Opinión mayoritaria de este Tribunal reconoce que es un cambio realizable con el consentimiento unánime de los titulares y los correspondientes permisos. Véase, Opinión mayoritaria, pág. 36. Por tanto, la mayoría de este Tribunal advierte que cada una de las obras que se pretenden remover podían ser realizadas con el consentimiento unánime o por acuerdo de la mayoría de los

---

[25]No nos hacemos eco de las expresiones realizadas sobre lo que constituyen elementos comunes limitados basada en la interpretación mayoritaria acogida en el caso de Batista de Nobbe v. Jta. Dir. Cond., res. 3 de abril de 2012, 2012 T.S.P.R. 63, 185 D.P.R.___(2012). Nos remitimos a nuestra Opinión disidente en el referido caso.

titulares. Tampoco nos encontramos ante la apropiación del techo como un elemento común general necesario. Así, no estamos ante actuaciones nulas en las que no aplica término alguno para su impugnación.

Ahora bien, al aplicar la norma hoy adoptada, este Tribunal, a mi juicio erra, al ordenar remover las estructuras a expensas del Consejo de Titulares.[26]

Difiero de la aplicación de la norma que hoy se acoge a los hechos del caso. El Consejo de Titulares debe actuar bajo los principios de diligencia en la defensa del régimen de propiedad horizontal. No puede actuar con desidia y mucho menos en abuso del derecho o contra sus propios actos. Resulta impermisible que el Consejo de Titulares aguarde por lo menos diez años para cumplir con su función y obtener a medias un remedio afectando las acciones que fueron avaladas por el transcurso del tiempo.

Examinado el expediente, no existe justificación alguna para la inacción y dejadez con la que actuó el Consejo de Titulares. Éste conocía en todo momento sobre la edificación y las circunstancias en las que se encontraba la azotea del Condominio desde antes que el señor Ramos Vázquez adquiriera el "penthouse" hace más de diez años. Recordemos que en esa área están ubicados los respiraderos, cisterna de agua y cuarto de máquinas de los ascensores. Ciertamente, el Consejo de Titulares tenía

---

[26]Estamos conforme en que procede la remoción del jacuzzi a expensas del señor Ramos Vázquez. La construcción de éste tan siquiera había finalizado.

acceso para mantener y mantuvo esas áreas. Como bien apunta la mayoría de este Tribunal, "las construcciones objetadas no pudieron pasar desapercibidas para el Consejo ni la Junta". Véase, Opinión Mayoritaria, pág. 39.

La doctrina de la incuria no avala la inacción por un tiempo prolongado. Castiga a aquel que reclama a destiempo al no proveer los remedios solicitados. El hecho de que se le imponga al Consejo de Titulares el costo de la remoción de las estructuras en esas áreas, a mi juicio, convalida el desempeño inadecuado y deficiente del Consejo de Titulares. Además, valida la acción incoada a destiempo, en perjuicio del señor Ramos Vázquez, quien adquirió con las consabidas modificaciones, y sin que ningún titular o parte se hubiera opuesto a ello hasta ahora.[27] Bajo estas circunstancias, entendemos que el Consejo de Titulares no tendría derecho a remedio alguno.

Aunque la incuria no considera sólo el factor del tiempo transcurrido, pesa mucho el que el Consejo de Titulares se haya cruzado de brazos en una actitud de dejadez o desinterés para hoy pretender impedir el disfrute que el señor Ramos Vázquez ha ostentado pacíficamente por todo este tiempo. No tengo la menor duda de que la tardanza del Consejo de Titulares simple y llanamente constituye una omisión que atenta contra la

---

[27]Véase, estipulación entre las partes que recoge el hecho de que ninguno de los miembros de la Junta de Condóminos o residente alguno ha realizado acercamientos en los diez años que lleva como residente el señor Ramos Vázquez.

estabilidad del régimen de propiedad horizontal. Recordemos que, aunque no es de aplicación el inciso c del Art. 42 de la Ley de Condominios, *supra*, el debate acaecido demuestra la indudable visión legislativa de requerir el reclamo diligente de derechos y la actuación responsable en la defensa del régimen de propiedad horizontal. A su vez, impide ir contra sus propios actos y reconoce el consentimiento tácito de las actuaciones acaecidas. Me parece insostenible que el Consejo de Titulares, como último órgano administrativo del régimen, abdicara su responsabilidad para instar su reclamo luego de una década. No existe justificación alguna para tal dilación.

Por último, aunque ciertamente existe un derecho de copropiedad de los titulares sobre los elementos comunes de la propiedad horizontal, no podemos perder de perspectiva que los cambios realizados eran permisibles. Por tanto, no estamos ante una situación de reinvidicar el derecho de propiedad del Consejo de Titulares sobre un elemento común, éste derecho se mantiene independiente de los cambios realizados.

Claro está, como expusimos en <u>Bravman, González v. Consejo de Titulares</u>, *supra*, la Ley de Condominios impide la adquisición por prescripción de los elementos comunes ya sean generales o limitados. Además, la ley impide variar el uso y destino sin el consentimiento unánime de

los titulares. En el caso de marras esa no es la situación.

La Ley de Condominios permite realizar todo aquello que beneficie a un titular siempre que no se invada o menoscabe el disfrute de otro apartamento o el derecho de los demás titulares. Incluso, permite ciertas edificaciones no contempladas en los planos del inmueble con el consentimiento unánime de los titulares. 31 L.P.R.A. sec. 1291i. De igual forma, permite realizar obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes. 31 L.P.R.A. sec. 1291n. Es por ello, que la mayoría de este Tribunal reconoce que los cambios realizados -incluyendo la edificación de la estructura en concreto- son permisibles por la Ley de Condominios. De lo contrario, estaríamos ante una situación no permitida por la ley y el Consejo de Titulares tendría derecho a la totalidad del remedio solicitado en cualquier momento. Ello no es lo acontece en las circunstancias ante nuestra consideración.

Como adelantamos, las áreas en controversia constituyen un elemento común designado en la escritura matriz. Sobre éste se realizó una construcción permisible por la Ley de Condominios. A nuestro juicio, ello no implica que de *facto* se haya apropiado de un elemento común y que se cambie el uso y destino de éste, según consignado en la escritura matriz. Para que se convierta en un área privativa requiere el consentimiento de todos

los titulares y una enmienda a la escritura matriz. Bajo estas circunstancias no existe un cambio en la configuración del apartamento del señor Ramos Vázquez ni en los elementos comunes que afecte la descripción registral del régimen o prive de su derecho propietario al Consejo de Titulares. El hecho de que la estructura erigida no surja del Registro de la Propiedad no tiene el efecto de cambiar el destino y uso del área. Tampoco es impedimento para conformar el Registro de la Propiedad a la realidad extraregistral.[28]

La interpretación que la mayoría sostiene conlleva la remoción de lo realizado independiente del tiempo transcurrido y de que ello sea permitido por la Ley de Condominios. El único disuasivo que se impone es que la remoción se haga a expensas de quien actuó con incuria. A nuestro parecer, ello no propicia la estabilidad del régimen cuya finalidad el legislador propició al aprobar la Ley de Condominios.

IV

Por los argumentos antes expresados, confirmaría al Tribunal de Apelaciones por concluir que el Consejo de

---

[28]A estos efectos, recordamos que la mayoría de este Tribunal en Batista de Nobbe v. Jta. Dir. Cond. de Titulares, *supra*, no ordenó enmendar la escritura matriz, a pesar de que se decidió que en ésta constaba designado como elemento común limitado uno de naturaleza privativa. Así, una mayoría de este Tribunal permitió que —en efecto— el Registro de la Propiedad no correspondiera a la realidad que determinó esta Curia. De esta forma, mantuvo una discordancia que surge del registro y la realidad determinada sobre un área.

Titulares actuó con incuria por lo que no es merecedor de remedio alguno.


                                    LUIS F. ESTRELLA MARTÍNEZ
                                         Juez Asociado